## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Heather J. S., | No. 23-cv-1378 (DLM) |
| Plaintiff, | |
| v. | |
| Martin J. O'Malley, Commissioner of Social Security Administration, | **ORDER** |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Heather J. S. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") to terminate her benefits. This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 14 (Plaintiff's motion and memorandum), 17 (Commissioner's motion and memorandum), 18 (Plaintiff's reply memorandum).) Both parties have voluntarily consented to the undersigned magistrate judge's review of this matter. For the reasons below, the Court denies Plaintiff's motion and grants Defendant's motion.

## BACKGROUND

Plaintiff, who suffers from various medical conditions and has been previously found disabled by the Social Security Administration ("SSA"), is back for the second time appealing the SSA's cessation of her disability insurance benefits ("DIB").

*The 2013 Comparison Point Decision ("CPD") Finding Plaintiff Disabled*

The story of the case dates back about a decade ago to September 21, 2013, the date when the SSA issued a fully favorable decision finding Plaintiff to have been disabled since May 29, 2010. (Tr.[1] at 97–99 (notice), 101–06 (decision).) The assigned Administrative Law Judge ("ALJ") found Plaintiff's diabetes, intense chronic pain from historical back injuries, and asthma were severe impairments that limited her to a residual functional capacity ("RFC") of only sedentary work[2] amounting to less than full-time hours. (Tr. at 103–04.) As a result, the ALJ found that she could not perform her past work as a bindery worker, nurse assistant, and licensed practical nurse, and that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. at 104–05.) The ALJ concluded his decision by noting that "[m]edical improvement is

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on September 14, 2023. (Docs. 9–9-1.) For ease of reference, citations to the transcript will treat the record as a single document and will identify the page number listed on the lower right corner of the cited document rather than the docket page number.

[2] By regulation, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(c). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

expected with appropriate treatment" and "a continuing disability review is recommended in twenty-four months." (Tr. at 106.)

*The 2017 Decision Finding Plaintiff No Longer Disabled*

Four years passed before the SSA conducted its continuing disability review. (Tr. at 128.) As a result of that review, on August 9, 2017, the SSA issued a Disability Cessation Notice to Plaintiff informing her that the SSA had found that her disability ceased as of August, 2017, and that she would receive her last disability benefit payment in October, 2017. (Tr. at 129.) The SSA based its decision on five medical reports from Plaintiff's medical treatment providers, which the SSA concluded showed that Plaintiff could "stand and walk without assistance," "use [her] hands and arms to perform tasks," perform activities despite her "fatigue, pain, and discomfort," and adequately breathe despite her asthma. (Tr. at 128.) The SSA also noted that the record contained no evidence of any severe health problems or major vital organ damage from Plaintiff's diabetes or high blood pressure, concluding that, "[i]n combination, [Plaintiff's] impairments are not severe enough to be disabling." (*Id.*)

Plaintiff then filed a timely request for a hearing before a Disability Hearing Officer ("DHO"), and the DHO held a hearing on the matter on March 21, 2018. (Tr. at 133–34 (request for hearing), 137–50 (DHO's hearing report).) On April 16, 2018, the SSA sent Plaintiff a Notice of Reconsideration upholding the decision to terminate her benefits. (Tr. at 165–67.)

Plaintiff next requested a hearing before an ALJ, and the ALJ held a hearing on the matter on June 26, 2019. (Tr. at 169 (request for hearing), 33–47 (hearing transcript).)

Counsel represented Plaintiff at the hearing, and Plaintiff testified on her own behalf. (Tr. at 33–35, 36–40.) A medical expert also testified and answered questions posed by Plaintiff's counsel. (Tr. at 40–42.) The medical expert opined that Plaintiff could do light work[3] with some additional limitations, but acknowledged that nothing in the record showed improvement to Plaintiff's asthma, diabetes, or degenerative disc disease since the SSA's fully favorable disability decision. (*Id.*) The medical expert also discussed the record's evaluations of Plaintiff's obesity, migraines, hypertension, fibromyalgia, and tremors. (*Id.*) The hearing concluded with testimony from a vocational expert who was also questioned by Plaintiff's counsel. (Tr. at 44–46.) The vocational expert opined that there was one representative job in the national economy that a person with physical limitations similar to Plaintiff's could perform. (Tr. at 44–46.)

On August 13, 2019, the ALJ issued a Notice of Unfavorable Decision finding Plaintiff no longer disabled because her medical impairments had improved. (Tr. at 7–9 (notice), 10–21 (decision).) Specifically, the ALJ found that "[t]he medical evidence supports a finding that, as of August 1, 2017, there had been a decrease in medical severity of the impairments present at the time of the CPD." (Tr. at 14.) Plaintiff appealed that decision to the SSA's Appeals Council, but it denied her request, making the ALJ's August, 2019 decision the final decision of the Commissioner. (Tr. at 1–3.)

---

[3] By regulation, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Even if the weight lifted is very little, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

Having received this final SSA decision, Plaintiff filed a federal civil action in this Court on June 25, 2020. *See Heather J. S. v. Kijakazi*,[4] No. 20-cv-1465 (TNL) (D. Minn.). Both parties moved for judgment on the administrative record in their favor, and the Court issued its decision on September 29, 2021, finding for Plaintiff. *See Heather J. S. v. Kijakazi*, No. 20-cv-1465 (TNL), 2021 WL 4462104, at *1 (D. Minn. Sept. 29, 2021). Specifically, the Court agreed with Plaintiff that to discontinue her benefits, the Commissioner had a duty to follow the "sequential analysis prescribed in 20 C.F.R. § 404.1594(f)"[5] and that the ALJ's failure to do so amounted to legal error. *Id.* at *3 (citing *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008)), *8 (quoting *Lucas v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020)). The Court explained that it is the Commissioner's burden at step three of that sequential analysis to "demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical

---

[4] Since Plaintiff filed her 2020 federal action, Commissioner Martin J. O'Malley has been appointed to replace Acting Commissioner Kijakazi, as reflected by this 2023 case's caption listing Commissioner O'Malley as Defendant.

[5] This up-to eight-step sequential analysis requires the ALJ to determine: 1) whether the claimant is engaged in substantial gainful activity; 2) if not, whether the claimant's disability continues because their impairments meet or equal the severity of a listed impairment; 3) whether there has been a medical improvement to the claimant's impairments; 4) if there has been medical improvement, whether that improvement relates to their ability to perform work; 5) if there has been no medical improvement, or if the medical improvement is unrelated to the ability to work, whether any exception to the medical improvement analysis applies; 6) if there is a medical improvement and it relates to the claimant's ability to work, whether all of the claimant's current combined impairments are severe; 7) if the current impairments or their combination is severe, whether the claimant has the RFC to perform any of their past relevant work activity; and 8) if the claimant cannot perform their past work, whether they can perform other work. *See* 20 C.F.R. § 404.1594(f); *see also Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008); *Dixon v. Barnhart*, 324 F.3d 997, 1000–01 (8th Cir. 2003).

condition is related to the claimant's ability to work" if they intend to discontinue a claimant's benefits. *Id.* (quoting *Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991) (per curiam)). As the Court noted, 20 C.F.R. § 404.1594(f) requires the SSA to support its decision with evidence of "'changes (improvement) in the symptoms, signs and/or laboratory findings associated with' the claimant's impairments 'measured from the most recent favorable decision that the claimant was disabled.'" *Id.* at *4 (citing *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021)). To show such supporting evidence of improvements "requires the Commissioner to *compare* a claimant's current condition with the condition at the time the claimant was found disabled and awarded benefits." *Id.* (quoting *Delph*, 538 F.3d at 945 (emphasis added), citing 42 U.S.C. § 423(f)(1)).

Ultimately, the Court found that the ALJ improperly concluded Plaintiff's severe impairments—including her asthma, diabetes, and symptoms related to her degenerative disc disease—were not as severe as they had been because the ALJ did not compare evidence from Plaintiff's 2013 fully favorable SSA decision with new evidence before the ALJ in 2019. *Id.* at *8 (citing 20 C.F.R. § 404.1594(b)(1)). Without this comparison, the Court found it was "left to guess what evidence supports a finding of medical improvement." *Id.* The Court observed that even though the ALJ made vague statements that Plaintiff's medical improvements would be elaborated on later in the decision, the ALJ never did so, instead discussing how he framed Plaintiff's RFC based on what Plaintiff could do now. *Id.* The Court also took issue with the ALJ's sequential analysis, concluding that the steps set out by regulations appeared muddled. *Id.* Specifically, the Court opined that an ALJ should only reach step four in the analysis to consider the question of "whether

this improvement was tied to Plaintiff's ability to work" if the ALJ has first found at step three that specific evidence of a medical improvement exists. *Id.* The ALJ failed to point to such evidence of improvement at step three and instead appeared to address step four to conclude Plaintiff's unexplained improvements were tied to Plaintiff's ability to work. *Id.*

All of these errors rendered the Court's ultimate job—to "determine whether the ALJ's decision [wa]s supported by substantial evidence on the record as a whole"—impossible. *Id.* The Court thus made no findings about whether Plaintiff remained entitled to DIB, or whether those benefits properly terminated because of medical improvements, instead remanding the case to the Commissioner for further proceedings in which the SSA had to follow its governing regulations at steps three to eight to analyze whether to discontinue Plaintiff's DIB. *Id.*

*The 2023 Decision Finding Plaintiff No Longer Disabled*

When the SSA received the Court's 2021 Order, the Appeals Council tasked a new ALJ with making new findings for steps three to eight of the sequential analysis to assess her continuing disability pursuant to 20 C.F.R. § 404.1594(f). (Tr. at 1437–39.) The ALJ held an initial hearing on August 2, 2022, at which Plaintiff failed to appear because of technical difficulties. (Tr. at 1327–36, 1514–18, 1545, 1548.) The ALJ nevertheless proceeded, by counsel agreement, to entertain an opening statement from Plaintiff's counsel and take testimony from a vocational expert. (Tr. at 1327–36.) The vocational expert testified that Plaintiff could perform at least three representative occupations listed in the Dictionary of Occupational Titles ("DOT"), assuming that she could perform work at a light exertional level, including a labeler (DOT No. 920.587-014); hand packager

(DOT No. 559.687-074); and inserter (DOT No. 794.687-058). (Tr. at 1334–35.) The ALJ scheduled another hearing for February 28, 2023 (Tr. at 1549), at which Plaintiff appeared, was represented by counsel, and testified on her own behalf. (Tr. at 1337–46.) A vocational expert appeared, but no further expert testimony was required. (Tr. at 1340–41.)

On April 5, 2023, the ALJ issued a new decision finding that Plaintiff's medical impairments had improved such that as of August 1, 2017, she was no longer disabled. (Tr. at 1299–312.) In his analysis, the ALJ explained that the 2013 CPD had determined Plaintiff was disabled due to her severe impairments of diabetes, chronic pain from historic back injuries, and asthma. (Tr. at 1301.) The ALJ found these same severe impairments remained present except for asthma, which the ALJ determined had changed from severe to non-severe. (Tr. at 1302.) The ALJ also identified several new severe impairments, including obesity, migraines, fibromyalgia, and tremor. (*Id.*, *see also* Tr. at 1305.)[6]

Relevant here, at step three of the analysis, the ALJ concluded that Plaintiff showed medical improvement as of August 1, 2017. (Tr. at 1304.) The ALJ noted that, at the time of the CPD, Plaintiff suffered symptoms of severe pain from her degenerative disc disease resulting in emergency room visits, was not a candidate for surgery, and had reduced sensitivity and range of motion. (*Id.*) By contrast, the ALJ found that since August 1, 2017, the record demonstrated that Plaintiff had normal spine examinations with normal gait and reflexes, and appeared to have stable back pain. (Tr. at 1304–05.) The ALJ also found that

---

[6] Although the ALJ stated that he "did not consider the limiting effects of the impairments that developed after the CPD" (Tr. at 1304), it appears clear from a review of the ALJ's later discussion of Plaintiff's RFC that he factored in Plaintiff's obesity, migraines, fibromyalgia, and tremor (*see* Tr. at 1307–08, 1310).

Plaintiff's asthma had improved since the CPD because her symptoms had become well controlled without reports of shortness of breath or being easily winded, and she had no other respiratory findings indicating a more severe impairment. (Tr. at 1304.) And as for Plaintiff's diabetes, the ALJ found the record showed no change since the CPD. (Tr. at 1304–05.)

Based on these findings, the ALJ concluded that Plaintiff's improvements related to her ability to perform work and that her RFC had therefore changed. (Tr. at 1304–06.) *See also* 20 C.F.R. § 404.1594(f)(4). He determined that, instead of sedentary work, Plaintiff had the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), provided the job included postural and environmental limitations to account for her back problems. (Tr. at 1304, 1306.) The ALJ explained that Plaintiff's "residual functional capacity has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments." (Tr. at 1306.) Such evidence included Plaintiff's testimony at her June 2019 hearing that she suffers from intense back pain, cannot sustain any posture for more than 30 minutes, cannot walk more than a block without resting, has uncontrolled tremors and muscle spasms, suffers from increasingly debilitating headaches, has seen no improvement to her diabetes or asthma, and has received a new fibromyalgia diagnosis. (Tr. at 1307.) Yet the ALJ found that while Plaintiff's impairments could produce these symptoms, he did not find other evidence in the record corroborated "the intensity, persistence and limiting effects of these symptoms." (*Id.*) The ALJ then identified medical evidence supporting this conclusion about Plaintiff's diabetes, degenerative disc disease,

fibromyalgia, migraines, and tremors, noting that test results were often normal and stable, and that medication appeared to stabilize many of her symptoms. (Tr. at 1307–08.) The ALJ found it particularly compelling evidence that Plaintiff's pain had improved from an eight out of ten to a four out of ten because of a new medication she began taking in 2016. (Tr. at 1309.)

The ALJ also reviewed the June 2019 hearing testimony at which a medical expert testified, but found that testimony only partially persuasive. (Tr. at 1308–09.) On the one hand, the ALJ found the medical expert's testimony unpersuasive as to his claim that Plaintiff had seen no medical improvement when the expert also opined that Plaintiff had the ability to do light work, which was greater than the sedentary exertional level limitation previously found. (Tr. at 1308.) On the other hand, the ALJ agreed that the record supported that Plaintiff could do light exertional work as the medical expert stated. (*Id.*)

Ultimately, the ALJ concluded that, based on expert testimony, and considering Plaintiff's age, education, work experience, and updated RFC, Plaintiff could perform at least three representative occupations listed in the DOT: labeler (DOT No. 920.587-014); hand packager (DOT No. 559.687-074); and inserter (DOT No. 794.687-058). (Tr. at 1311, 1334–35.) Because there were sufficient jobs available in the national economy for someone with Plaintiff's limitations, the ALJ found Plaintiff was no longer disabled as of August 1, 2017, and thus no longer eligible to receive disability benefits. (Tr. at 1312.) This decision constituted the Commissioner's final decision because the Appeals Council did not subsequently assume jurisdiction over the case. *See* 20 C.F.R. § 404.984(a).

On May 16, 2023, Plaintiff filed this lawsuit. She argues that instead of reevaluating whether Plaintiff's disability benefits should continue according to the applicable regulations—as set forth by the Court's 2021 decision—the Commissioner has committed the same legal errors; namely, that the ALJ legally erred at step three in the eight-step sequential evaluation set forth in 20 C.F.R. § 404.1594(f) because he did not identify substantial evidence in the record as a whole which, when specifically compared with the evidence at the time of the CPD, demonstrated a medical improvement.

## ANALYSIS

This Court reviews an ALJ's benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ fails to follow the SSA regulations governing their analysis of when to award or deny benefits, that is a legal error subject to

de novo review. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

Plaintiff's sole challenge is that the Commissioner's decision at step three failed to follow 20 C.F.R. § 404.1594(f)'s procedure for finding medical improvement and amounts to legal error. The Commissioner disagrees, arguing that the new ALJ did not legally err because he followed § 404.1594(f) and specifically compared evidence from the CPD with new evidence in the record at step three of the continuing disability review. The Court agrees with the Commissioner.

"The continuing disability review process involves a sequential analysis prescribed in 20 C.F.R. § 404.1594(f)." *Delph*, 538 F.3d at 945. Once a plaintiff meets their initial burden to show that they are disabled, "the burden shift[s] to the Commissioner . . . to show that [the plaintiff] is no longer disabled based on medical improvement." *Koch*, 4 F.4th at 663. A medical improvement is defined by regulation as

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(f)(b)(1).[7]

---

[7] The regulations define "symptoms" as "the claimant's own description of his or her physical or mental impairment(s)" which may not, alone, "establish that there is a physical

At step three of the evaluative process, the ALJ asks: " [H]as there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)" 20 C.F.R. § 404.1594(f)(3). "The issue under this standard 'is whether the claimant's medical impairments have improved to the point where [s]he is able to perform substantial gainful activity.'" *Koch*, 4 F.4th at 663 (quoting *Delph*, 538 F.3d at 945). The Eighth Circuit has repeatedly held that this burden requires the Commissioner to "demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical condition is related to claimant's ability to work." *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (citing *Nelson*, 946 F.2d at 1315). This "requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits." *Id.* at 663–64 (quoting *Delph*, 538 F.3d at 945). Even a single impairment's improvement may constitute a medical improvement if that single impairment's "improvement increases the claimant's overall ability to perform work related functions." *Heather J. S.*, 2021 WL 4462104, at *4 (quoting *Timothy M. v. Berryhill*, No. 17-cv-4664 (NEB/LIB), 2019 WL 2016010, at *2

---

or mental impairment(s)." 20 C.F.R. § 220.113(a). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from the claimant's own statements (symptoms)" and "must be shown by medically acceptable clinical diagnostic techniques." *Id.* § 220.113(b). Laboratory findings are defined by regulation as "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques" and may "include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.)[,] x-rays, and psychological tests." *Id.* § 220.113(c).

(D. Minn. Jan. 22, 2019), *R. & R. adopted*, 2019 WL 1238831 (D. Minn. Mar. 18, 2019)).

"Whether a claimant's condition has improved is primarily a question for the trier of fact,

generally determined by assessing witnesses' credibility." *Id.* (quoting *Muncy*, 247 F.3d at

734).

The Court finds that, unlike in the ALJ's August 2019 decision, here, the ALJ

specifically identified Plaintiff's three severe impairments at the time of the CPD,

discussed the underlying record evidence used to support a finding of disability in that

CPD, and then pointed to new record evidence establishing a medical improvement

according to the ALJ. (Tr. at 1304.) Specifically, the ALJ observed that the CPD's primary

focus in reaching a disability finding was on Plaintiff's back pain related to a past injury.

(*Id.*) The ALJ's decision notes that the CPD relied on record evidence that Plaintiff had

these symptoms and assessments: tender spine muscles most tender in the cervical and

lumbar spine; tender neck muscles; traps tightness; a magnetic resonance imaging ("MRI")

test showing degenerative disc disease of the lumbar spine involving a decrease in the space

between discs, decreased signals, and mild building and spurring; no candidacy for surgery;

increasing pain involving multiple emergency room visits for back pain; and reduced

sensitivity and range of motion. (*Id.*) The ALJ noted that, by comparison, "beginning

August 1, 2017, the claimant had largely normal examinations of the spine, with normal

gait, normal reflexes, and stable back pain." (*Id.* (citations to the record omitted).) The

Court has reviewed these records and finds that they contain the evidence described by the

ALJ, including that: Plaintiff had normal sensations and gait with no postural or resting

tremors and the physician did not feel the need to repeat any imagining studies (Tr. at 981);

a new medication brought "her overall pain level" to "a '4'" whereas "[p]rior to starting the medication" her pain "was more typically a[n] '8'" (*id.* at 972); she had no spasms and a full range of motion (*id.* at 973); and her spine pain, while still present, had become more stable (*id.* at 1145). Such records provide a sound regulatory basis to find a medical improvement because they constitute records showing an "improvement in the symptoms, signs, and/or laboratory findings associated with [Plaintiff's back] impairment." 20 C.F.R. § 404.1594(b)(1).

As it must do, the Court has also reviewed the record for evidence that conflicts with the ALJ's decision. *See Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("Evidence that both supports and detracts from the ALJ's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.") The record includes, for example, that Plaintiff still experienced some tenderness in her spine with spasms and a reduced range of motion (Tr. at 973, 980); had a change in insurance and could no longer receive her muscle relaxants, resulting in being less active than normal and experiencing tremors and imbalance (*id.* at 1023); was likely to still experience headaches and tremors even though her pain level had been responsive to a new medication (*id.* at 972); and experienced several falls related to numbness in her extremities, exhibited a slow gait, and had decreased sensation (*id.* at 1707–08).

After this careful review, the Court finds no legal error occurred where the ALJ followed the requirements of 20 C.F.R. § 404.1594(b)(1) to compare Plaintiff's CPD and its underlying record with the new record. In doing so, the ALJ found that Plaintiff had

shown a medical improvement in her back-related symptoms that had formed the primary basis for the CPD's finding of disability, and the Court finds that despite some conflicting evidence, substantial evidence in the record supports the ALJ's conclusion. *See Nash*, 907 F.3d at 1089 ("When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome.").

Additionally, even though Plaintiff's back-related impairment was the CPD's primary focus in reaching a disability determination, the ALJ still also compared Plaintiff's diabetes and asthma at the time of the CPD with the more recent record. (*Id.*) With multiple citations to record evidence, the ALJ concluded that Plaintiff's diabetes "continues to be [as] controlled as it was at the time of the CPD." (*Id.* (citations to the record omitted).) As for her asthma, the ALJ also compared the underlying CPD and current records, observing that the CPD included no environmental limitations to address this condition, and by the ALJ's best guess, it seems the "sedentary limitation addressed [her] asthma limitations as the claimant's asthma was well controlled and mild." (*Id.* (citations to the record omitted).) By comparison, the ALJ noted that the severity of Plaintiff's condition had changed because her "symptoms were well controlled, she denied shortness of breath or getting winded easily, and she had otherwise normal respiratory findings." (*Id.* (citations to the record omitted).) While it is clear that Plaintiff still had bouts of difficulty controlling her asthma (*see, e.g.*, Tr. at 1684 (Plaintiff had a "[f]aint expiratory wheeze in bases of lungs"), 1699 (Plaintiff had an asthma flareup and had to be hospitalized for about a day)), here again, the ALJ's citation to the record and the record as a whole still support the ALJ's conclusion (*see, e.g.*, Tr. at 964 (evaluating Plaintiff's asthma as "mild persistent" and

requesting a routine next asthma appointment in six months); 973 (Plaintiff denied shortness of breath or getting winded easily); 1684 (Plaintiff's breathing was "unlabored" and without "crackles")). Such records provide the appropriate legal basis required to find a medical improvement. 20 C.F.R. § 404.1594(b)(1).

Plaintiff takes issue with the ALJ's decision not to consult a new medical expert, relying instead on the June 2019 transcript of the medical expert's previous testimony before the first ALJ that expressly denied any record evidence supported medical improvement. While it could be that the new ALJ might have benefitted from additional medical expert testimony, and while the Appeals Council gave him the authority to take what steps he believed were needed to reevaluate Plaintiff's continuing disability review from steps three through eight, Plaintiff does not point to any legal authority for the proposition that the ALJ was *required* to seek more medical expert testimony. The ALJ also addressed the discrepancies in the medical expert's testimony, finding his opinion that there had been no medical improvement unpersuasive because it contradicted his testimony that, after considering the record, he found Plaintiff could perform light work—an exertional level that exceeded her previous RFC and demonstrated the expert found she had seen some medical improvement. (Tr. at 41–42, 1308.) The Court's role is not to reweigh the evidence, but to ask whether the ALJ's decision falls within the "available zone of choice" that the record reasonably supports. *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (internal quotations omitted)). The ALJ's decision here does so.

Plaintiff also directs the Court to the identical language used by the new ALJ when compared to the August, 2019 ALJ decision as evidence showing that the new ALJ made the same mistakes as the previous ALJ. That identical language reads: "The medical evidence supports a finding that, as of August 1, 2017, there had been a decrease in medical severity of the impairments present at the time of the CPD." (*Compare* Tr. at 14 *with* Tr. at 1304.) But as the Court has discussed above, the context surrounding these statements is quite different. The first ALJ's statement was a conclusory finding in a vacuum, unsupported by citations to the record or any meaningful comparison between Plaintiff's impairments at the time of the CPD and the record of her symptoms, signs, and laboratory tests in the years since the CPD. In contrast, the new ALJ's April 2023 decision still reaches the same conclusion, but it does not provide this language as a standalone, unsupported, conclusory finding. Instead, the decision supports the language with specific record citations and a specific comparison of Plaintiff's impairments at the time of the CPD and the record on her impairments in the years since the CPD.

In sum, the Court cannot find on this record that step three of the ALJ's continuing disability review failed to follow 20 C.F.R. § 404.1594(b)(1), and thus, the Court finds no legal error. Additionally, having reviewed the ALJ's decision and the record he had before him in reaching it, the Court also cannot find that the decision lacks substantial support in the record as a whole. *See Goff*, 421 F.3d at 789 (an ALJ's decision must be affirmed where evidence in the record as a whole supports their conclusions, even if another conclusion could also be drawn from the evidence).

**ORDER**

Based on the above, as well as the files, records, and proceedings in this case, **IT IS ORDERED** that:

1.      Plaintiff's Motion (Doc. 14) is **DENIED**; and

2.      Defendant's Motion (Doc. 17) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  August 16, 2024                           *s/Douglas L. Micko*
                                                  DOUGLAS L. MICKO
                                                  United States Magistrate Judge